## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ONEITA PARKER, Individually and as
Special Administrator of the Estate of
Paul H. Parker, Deceased,

                    Plaintiff,

vs.                                        Case No. 05-4066-KGS

SALINA REGIONAL HEALTH
CENTER, INC.,

                    Defendant.

_____

## MEMORANDUM AND ORDER

This matter comes before the court upon defendant Salina Regional Health Center, Inc.'s

Motion for Summary Judgment (Doc. 38).

Plaintiff brings this action against defendant for allegedly violating the Emergency

Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395dd.  Additionally,

plaintiff brings a claim against defendant under Kansas state law for medical negligence.

Defendant moves for summary judgment, arguing that plaintiff has failed to prove a prima facie

case as to the EMTALA claim and that plaintiff has failed to show causation as to the state law

medical negligence claim.  Plaintiff filed her responsive brief (Doc. 42) to which defendant

replied (Doc. 43).  The issues are now ripe for disposition.

## I.      Summary Judgment Standard.

A court grants a motion for summary judgment under Fed. R. Civ. P. 56 if a genuine

issue of material fact does not exist and if the movant is entitled to judgment as a matter of law.

The court is to determine "whether there is the need for a trial – whether, in other words, there

are any genuine factual issues that properly can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party."[1]   "Only disputes over facts that might

affect the outcome of the suit under the governing law will ... preclude summary judgment."[2]

There are no genuine issues for trial if the record taken as a whole would not persuade a rational

trier of fact to find for the nonmoving party.[3]

More than a "disfavored procedural shortcut," summary judgment is an important

procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'

Fed. R. Civ. P. 1."[4]  At the same time, a summary judgment motion does not empower a court to

act as the jury and determine witness credibility, weigh the evidence, or choose between

competing inferences.[5]

On a motion for summary judgment, the "judge's function is not. . . to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."[6]  The standard for summary judgment mirrors the standard for directed verdict.  The

court must decide "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of

---

[1]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[2]*Id.*

[3]*Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[5]*Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir. 1986), *cert. Denied*, 480 U.S. 947 (1987).

[6] *Liberty Lobby,* 477 U.S. at 249.

law."[7]  "If the [c]ourt concludes a fair-minded jury could not return a verdict in favor of the

nonmoving party based on the evidence presented, it may enter a summary judgment."[8]

**II.     Facts**

The following facts are either uncontroverted or, if controverted, construed in the light

most favorable to the non-moving party.  Immaterial facts and factual averments not properly

supported by the record are omitted.  Further, where the non-moving party fails to properly

respond to the motion for summary judgment, the facts as set forth by the moving party are

deemed admitted for purposes of the summary judgment motion.[9]

Plaintiff Oneita Parker (the "plaintiff" or "Mrs. Parker") is the surviving widow and duly-

appointed personal representative of Paul H. Parker, deceased (the "decedent" or "Mr. Parker").

Defendant Salina Regional Health Center, Inc., is a duly-licensed Kansas not-for-profit hospital

and maintains an Emergency Department that is subject to the Emergency Medical Treatment

and Active Labor Act ("EMTALA"), 42 U.S.C. §1395dd.

On June 7, 2003, plaintiff Mrs. Parker drove the decedent, Mr. Parker, to defendant's

emergency department ("ED").  When plaintiff and Mr. Parker arrived at the ED, plaintiff

observed the ED registration clerk with a couple and a little girl.  After waiting for

approximately twenty minutes, Mr. Parker was triaged.  During this twenty minute period, Mr.

Parker ambulated under his own power between the waiting area of the ED and outside on more

than one occasion.  However, at the end of this twenty minute period, Mr. Parker became

---

[7] *Id*. at 251-52.

[8] *Anderson v. City of Cleveland*, 90 F. Supp. 2d 906, 907-08 (E.D. Tenn. 2000), *citing Anderson v. Liberty Lobby*, 477 U.S. at 251-52.

[9] D. Kan. R. 56.1(a).

unresponsive and a Code Blue was called, triggering immediate treatment of Mr. Parker by ED

staff and doctors.  After approximately two hours of emergency medical treatment, Mr. Parker

was pronounced dead at 12:07 a.m. on June 8, 2003.  At the time of his death, decedent weighed

more than 300 pounds and had a medical history as a diabetic with congestive heart failure.

### III.     Discussion

Defendant raises several grounds in its motion for summary judgment.  Specifically,

defendant contends that it is entitled to summary judgment on plaintiff's EMTALA claim

because (1) the alleged violation of EMTALA is "specifically authorized" by EMTALA

regulations; (2) defendant complied with EMTALA and followed the essential elements of its

policies; and (3) a twenty-minute wait does not violate EMTALA.  Defendant also contends that

it is entitled to summary judgment on plaintiff's state law negligence claim because plaintiff

cannot show causation.

Plaintiff, in her response, contends that there are genuine issues of material fact regarding

her EMTALA claim against defendant.  Specifically, plaintiff contends that SHRC's reception

clerk sought the Parkers' insurance information prior to Mr. Parker being triaged in violation of

EMTALA.  Next, plaintiff contends that defendant failed to follow its own policy when it failed

to provide an appropriate medical screening examination to Mr. Parker upon arrival at the ED.

Further, plaintiff contends that a twenty minute wait before receiving an appropriate medical

screening examination is a violation of EMTALA and SRHC's own policy.  Finally, as to

plaintiff's Kansas state law claim for medical negligence, plaintiff asserts that genuine issues of

material fact still exist and, in the alternative, plaintiff seeks leave to amend her pleadings to

assert a lost chance of recovery under state law.

### A.      Plaintiff's EMTALA claim.

The EMTALA was enacted to prevent hospitals from "dumping" indigent patients in

need of emergency medical treatment and to ensure an adequate first response to a medical crisis

for all patients.  In furtherance of those goals, the EMTALA statute creates a cause of action

against hospitals which fail to appropriately screen and/or stabilize patients.  Therefore, under

EMTALA, a hospital has two obligations.[10]  First, a hospital must conduct an "appropriate"

medical screening examination, or triage, to determine whether a patient is suffering from an

emergency medical condition.[11]  Second, a hospital is required to stabilize a patient before

transporting him or her elsewhere if an emergency medical condition exists.[12]

As to the first duty to conduct an "appropriate" medical screening examination, hospitals

are specifically obliged to create standard emergency room screening procedures based on the

hospital's particular needs and circumstances.[13]   When a court must resolve failure to screen or

conduct appropriate screening exam claims under the EMTALA, "[a] court should ask only

whether the hospital adhered to its own procedures, not whether the procedures were adequate if

followed."[14]  However, mere *de minimis* variations from the hospital's standard procedures do

---

[10]*Ingram v. Muskogee Regional Medical Center,* 235 F.3d 550, 551 (10th Cir. 2000).

[11]42 U.S.C. §1395dd(a); *Abercrombie v. Osteopathic Hosp. Founders Ass'n*, 950 F.2d 676, 680 (10th Cir. 1991); *Griffith v. Mt. Carmel Medical Ctr.*, 831 F. Supp 1532, 1538 (D. Kan. 1993).

[12]42 U.S.C.  § 1395dd(b)(1)(A).

[13]*Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir. 1994).

[14]*Id.* at 522 n.4.

not amount to a violation of hospital policy as a matter of law.[15]

The essence of the EMTALA is that a hospital's obligation is measured by whether it treats every patient perceived to have the same medical condition in the same manner.[16]  To that end, the EMTALA is "neither a malpractice nor a negligence statute."[17]  Therefore, inserting into the EMTALA an action for violating standard medical procedures would convert the statute "into a federal malpractice statute, something it was never intended to be."[18]

Plaintiff's EMTALA claim focuses on the first obligation under EMTALA, or the obligation to conduct an appropriate medical screening examination prior to obtaining a patient's insurance information.  Upon reviewing the parties' briefing as to plaintiff's EMTALA claim, the court finds essentially two key factual inquiries at issue in defendant's motion: (1) the undisputed fact that an inquiry into Mr. Parker's insurance status was made prior to triage; and (2) the disputed fact that Mrs. Parker informed the registration clerk of Mr. Parker's symptoms upon arrival at the ED.

### 1.    Inquiring into insurance information prior to triage.

As the court already has stated, the Tenth Circuit has held that when a court must resolve failure to screen claims under the EMTALA, "[a] court should ask only whether the hospital adhered to its own procedures, not whether the procedures were adequate if followed."[19]  In

---

[15]*Id.* at 523.

[16]*Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 797 (10th Cir. 2001).

[17]*Repp*, 43 F.3d at 522.

[18]*Tank v. Chronister*, 941 F. Supp. 969, 972 (D. Kan. 1996) (quoting *Hussain v. Kaiser Found. Health Plan*, 914 F. Supp. 1331, 1335 (E.D. Va. 1996)) (internal quotations omitted).

[19]*Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 n.4 (10th Cir. 1994).

addition, mere *de minimis* variations from the hospital's standard procedures do not amount to a

violation of hospital policy as a matter of law.[20]  Plaintiff contends that a genuine issue exists

because it is undisputed that SRHC's reception clerk sought Mr. Parker's insurance information

prior to triage in violation of SRHC's own ED policy.

> SHRC's ED policy states in relevant part:
>
>> Whenever any individual comes to the emergency department and requests, or
>> someone on behalf of the individual requests an examination or treatment for a
>> medical condition, a record will be initiated by the triage nurse.  The triage nurse
>> will determine a level of need for care as per health center policy and *prior to any
>> inquiry regarding the individual's method of payment or insurance status.*[21]

In this case, the undisputed facts show that when Mr. and Mrs. Parker first arrived at

SRHC's emergency department, no inquiry was made as to the Parker's method of payment or

insurance status.  Further, the undisputed facts show that no inquiry was made into the Parker's

insurance status at any point during the approximately twenty minutes preceding Mr. Parker's

collapse.  Finally, while the undisputed facts demonstrate that Mr. Parker collapsed at the

reception clerk's desk prior to triage, the undisputed facts also show that the Parkers approached

the registration desk of their own accord, and not at the behest of the SRHC registration clerk or

as a condition precedent to Mr. Parker obtaining a triage.  Therefore, while plaintiff argues that

the hospital violated its own policy since it appears there was at least *some* inquiry made prior to

triage by virtue of Mr. Parker seating himself at the registration desk, in the court's view, any

such violation was minimal, or *de minimis*, under the circumstances of this case.

---

[20]*Id.* at 523.

[21]Salina Regional Health Center Emergency Department Specific Patient Care Policy and
Procedure (Exhibit P to Doc. 39) at 2 (emphasis added).

This conclusion is supported by the federal regulations pertaining to the EMTALA

statute.  Specifically, the U.S. Department of Health and Human Services issued a Special

Advisory Bulletin on the Patient Anti-Dumping Statute that provided in relevant part:

> [W]e believe that many commenters mistakenly interpreted the proposed bulletin
> as an attempt to derail the use of reasonable hospital registration procedures that
> do not conflict with the goals of the Patient Anti-Dumping Statute.  We did not
> mean to give that impression. ...Specifically, ...a hospital 'may continue to follow
> reasonable registration processes for individuals presenting with an emergency
> medical condition.'  Reasonable registration processes should not unduly
> discourage individuals from remaining for further evaluation.  Reasonable
> registration processes may include asking whether an individual is insured and, if
> so, what that insurance is, as long as this inquiry does not delay screening or
> treatment.[22]

This advisory bulletin was subsequently codified in the Federal Register, 42 C.F.R.

§489.24(d)(4) as follows:

> (4) Delay in examination or treatment.
>
> (i) A participating hospital may not delay providing an appropriate medical
> screening examination...in order to inquire about the individual's method of
> payment or insurance status....
>
> [However,]
>
> (iv) Hospitals may follow reasonable registration processes for individuals for
> whom examination or treatment is required by this section, including asking
> whether an individual is insured and, if so, what that insurance is, as long as that
> inquiry does not delay screening or treatment.  Reasonable registration processes
> may not unduly discourage individuals from remaining for further evaluation.[23]

Therefore, upon careful consideration of the facts of this case, court finds that these facts

fall squarely within the regulations governing the EMTALA statute and amount to a *de minimis*

---

[22]64 Fed. Reg. 61,353 (November 10, 1999) codified at 42 C.F.R. §489.24.

[23]42 C.F.R. §489.24(d)(4)(i),(iv).

variation from hospital policy.

### 2. Advising the reception clerk of Mr. Parker's condition upon arrival at the ED.

Defendant also contends that the undisputed facts fail to raise a genuine issue on

plaintiff's EMTALA claim, because SRHC followed its own procedures and provided Mr.

Parker with an appropriate medical screening examination.  SRHC's ED policy states:

> All patients coming to the emergency department will be offered an appropriate medical screening examination.[24]

The EMTALA statute does not specifically define the term "appropriate medical

screening."[25]   The Tenth Circuit has held that when a court must resolve failure to screen claims

under the EMTALA, "[a] court should ask only whether the hospital adhered to its own

procedures, not whether the procedures were adequate if followed."[26]  SRHC's own ED policy

states that all patients will be offered "an appropriate medical screening examination."[27]

However, the Tenth Circuit has stated that the *purpose* of an appropriate screening is "to

determine whether an 'emergency medical condition' exists.  Nothing more, nothing less."[28]

---

[24]Salina Regional Health Center Emergency Department Patient Care Policy and Procedure (Exhibit P to Doc. 39) at 3.

[25]*Griffith v. Mt. Carmel Medical Center*, 831 F. Supp. 1532, 1538 (D. Kan. 1993).  The term "appropriate" has even been called "one of the most wonderful weasel words in the dictionary."  *Id.* (quoting *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 271 (6th Cir. 1990).

[26]*Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 n.4 (10th Cir, 1994).

[27]Salina Regional Health Center Emergency Department Patient Care Policy and Procedure (Exhibit P to Doc. 39) at 3.

[28]*Griffith v. Mt. Carmel Medical Center*, 831 F. Supp. 1532, 1538 (D. Kan. 1993) (quoting *Collins v. Depaul Hosp.*, 963 F.2d 303, 307 (10th Cir. 1992)).

To that end, the EMTALA is "neither a malpractice nor a negligence statute."[29]  Therefore,

inserting into the EMTALA an action for violating standard medical procedures would convert

the statute "into a federal malpractice statute, something it was never intended to be."[30]

With this in mind, the undisputed facts demonstrate that Mr. Parker arrived at SRHC's

ED and waited approximately twenty minutes for a triage nurse before he collapsed while seated

in front of the registration desk.  Additionally, the undisputed facts demonstrate that during this

twenty-minute period, Mr. Parker ambulated throughout the ED, including walking in and out of

the building.

Plaintiff does point to one disputed fact as raising a genuine issue – namely, that Mrs.

Parker informed SRHC's registration clerk upon arrival that Mr. Parker was vomiting blood,

experiencing difficulty breathing, had lower stomach pain, and was possibly experiencing a heart

attack.  Plaintiff contends that if the court construes this fact in favor of plaintiff as the non-

moving party, then this would raise a genuine issue on plaintiff's EMTALA claim.  The court

disagrees.  Even construing this disputed fact in a light most favorable to plaintiff, the court fails

to find a genuine issue.  As previously stated, the court's sole duty in an EMTALA case is to

"ask only whether the hospital adhered to its own procedures, not whether the procedures were

adequate if followed."[31]   To that end, plaintiff fails to reference, nor has the court found upon its

own review of SRHC's ED policy, a procedure by which a reception clerk is required to report

symptoms of patients arriving at the ED to a triage nurse.  The court finds that to inquire further

---

[29]*Repp*, 43 F.3d at 522.

[30]*Tank v. Chronister*, 941 F. Supp. 969, 972 (D. Kan. 1996) (quoting *Hussain v. Kaiser Found. Health Plan*, 914 F. Supp. 1331, 1335 (E.D. Va. 1996)) (internal quotations omitted).

[31]*Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 n.4 (10th Cir, 1994).

into this issue would be akin to questioning whether SRHC's procedures were adequate, if

followed – something the court is not permitted to do under the EMTALA.[32]   Rather, the court

finds that plaintiff's argument regarding the reception clerk's actions in light of Mrs. Parker's

assertions to her upon Mr. Parker's arrival at the ED is more akin to a negligence claim than an

EMTALA claim.[33]

Therefore, upon a thorough review of the record, the court fails to find a genuine issue on

plaintiff's EMTALA claim and, as a result, shall grant defendant's motion as to this claim.

### B.       Plaintiff's negligence claim.

Defendant additionally moves for summary judgment on plaintiff's negligence claim.

However, at this time, and in light of the court's grant of defendant's motion for summary

judgment on plaintiff's EMTALA claim, the court looks to 28 U.S.C. §1367(c)(3) which states

in pertinent part:

> The district courts may decline to exercise supplemental jurisdiction over a claim
> under subsection (a) if ... the district court has dismissed all claims over which it
> has original jurisdiction[.]

Having dismissed plaintiff's EMTALA claim on which the court had original federal

jurisdiction, this court may decline to exercise continuing "pendent" or supplemental jurisdiction

over plaintiff's state law claim.[34]   Accordingly, the court will dismiss without prejudice

---

[32] *Id.* ("[a] court should ask only whether the hospital adhered to its own procedures, not whether the procedures were adequate if followed.").

[33] *Tank v. Chronister*, 941 F. Supp. 969, 972 (D. Kan. 1996) (quoting *Hussain v. Kaiser Found. Health Plan*, 914 F. Supp. 1331, 1335 (E.D. Va. 1996)) (holding that inserting into the EMTALA an action for violating standard medical procedures would convert the statute "into a federal malpractice statute, something it was never intended to be.")

[34]28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).

plaintiff's state law claim.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 38) is hereby granted with respect to Plaintiff's EMTALA claim.

**IT IS FURTHER ORDERED** that plaintiff's state law negligence claim is hereby dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 1st day of December, 2006, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge